UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AMANDA MASON

    Plaintiff,

v.

MIDLAND CREDIT MANAGEMENT, INC.

    Defendant.

COMPLAINT

JURY TRIAL DEMANDED

JUDGE SEIBEL



## INTRODUCTION

1. This is an action for money damages and declaratory judgment, brought by an individual consumer for Defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (hereinafter "FDCPA").

2. Specifically, this action relates to Defendant's illegal and abusive attempts to collect a debt by using threats to take actions which cannot legally be taken.

## JURISDICTION AND VENUE

3. Jurisdiction is conferred by 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

4. Venue in this District is proper because the defendant's place of business is in this district and the events underlying the cause of action herein occurred in this district.

## PARTIES

5. Plaintiff Amanda Mason ("Mason") is a natural person who currently resides in Mt. Vernon, New York, in Westchester County.

6. Mason is a consumer as defined by 15 U.S.C. § 1692a(3).

7. Defendant Midland Credit Management, Inc. (hereinafter "MCM") is a Kansas corporation engaged in the collection of debts in New York State with a principal place of business at 8875 Aero Drive, San Diego, CA 92123.

8      Defendant MCM has as one of its principal purposes the collection of debts, and it regularly attempts to collect debts alleged to be due another. On MCM's website, MCM describes itself as "a national financial services company that helps consumers resolve past-due financial obligations." It explains that "Many lenders sell the right to collect on your account to companies like Midland Funding LLC or one of MCM's affiliate companies. When this happens, MCM, which specializes in servicing these types of outstanding debt obligations, will begin servicing your account."

9      In short, MCM is a debt collector as defined by 15 U.S.C. § 1692a(6)

## FACTS

10     In or about September of 2004, Mason purchased a Dell computer and related equipment for $1979.78 for her personal use.

11     Mason made payments on the computer over the following four years, totaling some $3715.

12     Mason's payments were made to "Dell Financial Services."

13     Upon information and belief, CIT Bank was the actual owner of the debt being paid by Mason for her Dell computer.

14     On or about February 15, 2012, MCM communicated by mail with Mason ("the February Communication"), seeking to collect a debt of $5,423.15.

15     The February Communication included the statement that "Midland Funding LLC recently purchased your CIT BANK account, previously serviced by, or on behalf of Dell Financial Services L.L.C. and Midland Credit Management, Inc. ("MCM"), a debt collection company, is the servicer of this obligation."

16     MCM's February Communication also included the statement that "Midland Credit Management, Inc. is considering forwarding this account to an attorney in your state for possible litigation."

17     MCM's February Communication also included the statements that "If we don't hear from you or receive payment by 03-31-2012, we may proceed with forwarding this account to an attorney," and also "If the account goes to an attorney, our flexible options may no longer be available to you."

18     By a certified mail letter dated March 5, 2012 and received by MCM on March 9, 2012, Mason requested a verification of the debt (the "Consumer's Request for Verification").

19     Nonetheless, on or about March 18, 2012, MCM again communicated by mail with Mason ("the March Communication").

20   The March Communication was captioned "PRE-LEGAL REMINDER" in large, bold type.

21   The March Communication included the following: "This letter is to inform you that we are considering forwarding this account to an attorney in your state for possible litigation."

22   MCM's March Communication also included the statements that "If we don't hear from you or receive payment by 03-31-2012, we may proceed with forwarding this account to an attorney," and also "If the account goes to an attorney, our flexible options may no longer be available to you."

23   MCM's March Communication stated that the "previous balance" was $3810.32 and that "accrued interest" of $1,652.00 brought the total Mason owed up to $5,462.32. The March Communication also stated that the interest rate on the debt was 15%

24   On or about April 4, 2012, Mason received from MCM a multi-page document in response to the Consumer's Request for Verification. There was a cover letter from MCM and a document, with the heading "Dell Financial Services, LLC Customer Account Information." These, collectively, shall be referred to as the April Communication.

25   The April Communication showed that Mason had incurred a debt of $1979.78, based on three purchases she had made in September of 2004.

26   The payments listed on the April Communication show that Mason made periodic payments of various amounts: she paid $121 in the remainder of 2004; $1015, in 2005; $435 in 2006; $998 in 2007 and $1146 in 2008, with her final payment being made on August 29, 2008.

27   According to the admittedly somewhat confusing records provided by MCM to Mason, it appears that Mason paid a total of $3715 on an original debt of $1979.78.

28   The final notation on the "Dell Financial Services, LLC Customer Account Information" showed that, with service charges, late charges, finance charges, and overlimit charges, Mason owed Dell $3,810.32 as of January, 1, 2012.

29   Despite this breakdown of the payments and charges, MCM falsely stated to Mason in March of 2012 that Mason owed $5462.32 (just two months after records showed that Mason allegedly owed $3810.32).

30   CIT Bank is a foreign business corporation, incorporated in Utah.

31   The Utah Statute of Limitations for Consumer Transactions is one year, under the Utah Consumer Credit Code, Title 70C of the Utah Code Annotated.

32   In addition to written communications, MCM also communicated with Mason by telephone, calling her repeatedly at her job multiple times per day, even though Mason told the callers that such calls at her workplace were embarrassing and inconvenient.

33   Mason operates a day care center for children and supervises the work of others in this daycare operation.

34   The calls from MCM were made not to a private line answered only by Mason but to a phone line answered by multiple employees of the daycare center.

35   Mason became the butt office jokes as a result of these endless collection calls.

36   These calls were made with the purpose of annoying, abusing or harassing Mason.

37   As a result of these calls, Mason was humiliated and embarrassed, causing her to suffer anxiety and upset.

## CAUSE OF ACTION
Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq

38   Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs. By undertaking the above referenced collection activities, Defendant MCM violated 15 U.S.C. § 1692 et seq.

39   Specifically and without limitation, Defendant MCM violated the FDCPA by:

   i)   Communicating with the consumer at a time or place known or which should have been known to be inconvenient to the consumer, in violation of 15 U.S.C. §§1692c; and

   ii)  Engaging in conduct the natural consequence of which is to harass, oppress or abuse any person in connection with the collection of debt; specifically, by engaging any person in telephone conversation repeatedly or continuously, with intent to annoy, abuse, or harass any person at the called number, in violation of §§ 1692d and 1692d(5); and

   iii) Using false, deceptive or misleading representations in connection with the collection of a debt, and specifically, the threat to take any action that cannot be taken or that is not intended to be taken (here, the threat of referral to an attorney for litigation where MCM knew that the debt was time-barred under the one-year statute of limitations) and the use of a false representation or deceptive means to collect or attempt to collect a debt (here, the false representation that Mason's debt was $5462.32, when two months earlier, her debt, according to the records of the company that then held her debt, was only $3810.32, in violation of §§ 1692e, 1692e(5), and 1692e(10) and

4

    iv)     Violating the law governing the validation of debts, which provides that if the consumer notifies the debt collector in writing within the thirty days of the debt collector's 15 USC 1692(g) notice, disputing the claim and seeking validation thereof, all collection efforts must cease until the debt collector obtains verification of the debt and a copy of such verification is mailed to the consumer by the debt collector. Despite this provision of the FDCPA, MCM received Mason's certified mail letter disputing her debt and asking for verification on March 9, 2012; MCM sent her a further dunning letter on March 18, 2012, and did not provide Mason with their alleged verification until April 4, 2012, in violation of §§ 1692g(5)(b).

40     .MCM's actions, as described herein, are not an isolated instance of misconduct. Rather, MCM routinely relies on harassing and abusive phone calls; false threats of legal action on time-barred complaints, and continued collection efforts even during times when federal law clearly mandates that collection efforts must cease, and in so doing, increases its profits.

41     As a result of these violations of the FDCPA, Mason has suffered actual damages, including, without limitation:

    i)     Damage to her credit;

    ii)     Legal fees; and

    iii)     Emotional damages including but not limited to stress, anxiety, humiliation, and embarrassment

42     As a result of these violations, Mason is entitled to statutory damages of up to $1,000.00, actual damages, and attorney's fees and costs.

WHEREFORE plaintiff respectfully requests that this Court award:

    i)     Declaratory Judgment that Defendant MCM's conduct violated the FDCPA;

    ii)     Actual damages;

    iii)     Statutory damages;

    iv)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and

    v)     Such other and further relief as law or equity may provide.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

Dated: June 20, 2012
Pleasantville, New York

                                      Respectfully Submitted,

                                      *Elizabeth Shollenberger*
                                      Elizabeth A. Shollenberger(EAS8989)
                                      Attorney for Plaintiff
                                      Schlanger & Schlanger, L.L.P.
                                      343 Manville Road
                                      Pleasantville, NY 10570
                                      Telephone: 914-946-1981, ext. 103
                                      Facsimile: 914-946-2930
                                      Email: eshollenberger@schlangerlegal.com